Entered on Docket July 18, 2018



Below is a Memorandum Decision of the Court.

_____
**Brian D. Lynch
U.S. Bankruptcy Court Judge**
(Dated as of Entered on Docket date above)

_____

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| In re:<br><br>FRASER'S BOILER SERVICE, INC.,<br><br>Debtor. | Case No. 18-41245-BDL<br><br>**MEMORANDUM DECISION ON FRASER'S BOILER SERVICE, INC.'S MOTION FOR AN ORDER APPROVING (I) A SETTLEMENT AGREEMENT WITH CERTAIN INSURERS, (II) THE SALE OF CERTAIN POLICIES TO CERTAIN INSURERS, AND (III) CERTAIN OTHER RELIEF TO BE PROVIDED TO CERTAIN INSURERS** |
|---|---|

Debtor Fraser's Boiler Service, Inc. filed a motion (ECF No. 61) requesting that the Court enter an order: (i) approving the Settlement Agreement and Release, dated January 11, 2018, as later amended, between and among Fraser's, receiver Resource Transition Consultants LLC ("RTC"), sole shareholder DJO Services LLC, and Certain Insurers,[1] (ii) authorizing the sale under the Settlement Agreement of select insurance policies back to the Certain Insurers pursuant to Section 363(b) of the Bankruptcy Code free and clear of all

---

[1] The Certain Insurers are Allianz Underwriters Insurance Company and Chicago Insurance Company (collectively, "Allianz"), Century Indemnity Company and Pacific Employers Insurance Company (collectively, "Century"), Hartford Accident and Indemnity Company, and Zurich American Insurance Company.

MEMORANDUM DECISION ON MOTION TO APPROVE
SETTLEMENT AGREEMENT WITH CERTAIN INSURERS - 1

liens, claims, and interests, and (iii) enjoining various claims against the Certain Insurers pursuant to Section 105 of the Bankruptcy Code.

Objections to the Motion were filed by non-settling insurers Certain London Market Insurance Companies and Certain Underwriters at Lloyd's, London ("London Market Insurers") and National Union Fire Insurance Company of Pittsburgh, PA (collectively, the "Opposing Insurers") (ECF No. 134), non-settling insurer The Travelers Indemnity Company (ECF No. 144),[2] and the U.S. Trustee (ECF No. 183). Fraser's filed two replies: one to the objections of the Opposing Insurers and Travelers (ECF No. 165) and one to the objections of the U.S. Trustee (ECF No. 196). Replies in support of the Motion were also filed by the Official Committee of Unsecured Creditors (ECF No. 186) and Certain Insurers Century and Allianz (ECF No. 199).

The Motion was argued on June 21, 2018. At the end of the hearing, counsel for London Market Insurers requested a seven-minute recess to confer with counsel for Fraser's regarding potential resolution. London Market Insurers and Fraser's were not able to reach an agreement during the seven-minute recess and requested that the Court refrain from ruling on the Motion for one week to allow the parties to continue their discussions. The Court instructed London Market Insurers and Fraser's to update the Court on the status of their discussions no later than June 28, 2018, and the Motion was continued to July 3, 2018.

London Market Insurers and Fraser's did not reach an agreement by June 28, 2018. Fraser's requested that the Court rule on the Motion at the hearing set for July 3, 2018. London Market Insurers requested that the Court delay announcing its ruling for two weeks to allow additional time for negotiations. At the July 3, 2018 hearing, the Court announced from the bench that it would issue a written ruling on the Motion and laid out the general principles

---

[2] At the June 21, 2018 hearing, counsel for Travelers announced that Travelers had reached a tentative settlement with Fraser's and would not be presenting any oral argument at the hearing. One week later, a motion to approve a settlement agreement with Travelers was filed (ECF No. 226).

of that ruling. The Court also requested supplemental briefing from Fraser's and the Opposing Insurers on the issue of whether the judgment reduction provision in Paragraph 6.8 of the Settlement Agreement adequately protects the Opposing Insurers' interests under 11 U.S.C. § 363(e). Fraser's submitted supplemental briefing (ECF No. 237), as did the Opposing Insurers (ECF No. 240). The parties filed replies to the supplemental briefing as well. *See* ECF No. 267 (Opposing Insurers' reply); ECF No. 269 (Fraser's reply). With their supplemental briefing, the Opposing Insurers also filed a motion (ECF No. 239) seeking to introduce the cost sharing agreement among several of the insurers into the record under seal. The motion to file under seal was granted (ECF No. 258), and the Court has considered the contents of the Cost Sharing Agreement.[3]

### I. Factual Background

For several decades, Fraser's operated a business erecting and repairing industrial, commercial, and marine boilers in Washington, Oregon, and California. Fraser's business declined over the years, and Fraser's became insolvent by late 2014. Fraser's petitioned in King County Superior Court for the appointment of a receiver. In early 2015, RTC was appointed as receiver and ordered to take charge over Fraser's assets.

Since the 1990s, individuals have brought claims against Fraser's for personal injuries related to asbestos exposure from Fraser's operations in various courts in Washington, Oregon, and California. Additional claims are anticipated. Fraser's is insured under certain comprehensive general liability ("CGL") insurance policies that provide coverage for Fraser's liability in connection with the asbestos-related claims. Fraser's insurers, including some of the Certain Insurers, have generally been paying defense and indemnity for asbestos-related claims on behalf of Fraser's since at least 1994. However, some of these insurers have also

---

[3] Fraser's complains in its most recent pleading (ECF No. 269) that the Opposing Insurers obtained an order allowing them to file the Cost Sharing Agreement under seal, yet have refused to provide Fraser's and its bankruptcy counsel with a copy. Fraser's and its counsel have a right to ask this Court to modify the order sealing the Cost Sharing Agreement, but have chosen not to do so. *See* Local Bankr. R. 9018-1(d).

MEMORANDUM DECISION ON MOTION TO APPROVE
SETTLEMENT AGREEMENT WITH CERTAIN INSURERS - 3

asserted defenses that would limit the scope of their coverage obligations and at times have contended that their policies were exhausted or nearly exhausted.

Fraser's and RTC were involved in a long-running series of disputes with Providence Washington Insurance Company ("PWIC") regarding PWIC's claim that its policies were exhausted in approximately 2010. PWIC filed a declaratory judgment action in state court in 2012. PWIC's action resulted in a settlement, which was finalized in December 2016. Under the PWIC settlement, Fraser's, via RTC, would receive $1.95 million, less any amounts paid by PWIC toward certain asbestos-related claims, in exchange for a release and a bar on contribution claims. Most of Fraser's other insurers, including the Certain Insurers, filed objections in state court to approval of the PWIC settlement. They objected, in part, to the bar on the assertion of contribution and indemnity claims by other insurers against PWIC.

RTC engaged in settlement discussions with some of Fraser's remaining insurers, including the Certain Insurers. These discussions resulted in the Settlement Agreement, under which the Certain Insurers agreed to pay a total of approximately $11.66 million and no longer pursue their objections to the PWIC settlement in state court, in exchange for mutual releases and other relief set forth in the Settlement Agreement and Motion. After the Settlement Agreement was executed, the PWIC settlement was approved in the state court receivership on January 31, 2018. Approval of the PWIC settlement is the subject of a pending appeal by the Certain Insurers and the non-settling insurers.

The terms of the Settlement Agreement with the Certain Insurers at issue here obligated DJO Services LLC to take all necessary steps to cause Fraser's to file a chapter 11 bankruptcy case. *See* Settlement Agreement ¶ 6.2. The purpose of filing the bankruptcy case was to permit the Certain Insurers to obtain protection through a free and clear sale under Section 363 of the Bankruptcy Code, including an injunction against future defense, indemnity, or contribution claims for asbestos-related claims. Under the Settlement

Agreement, Fraser's and RTC will sell certain insurance policies back to the Certain Insurers free and clear of all liens, encumbrances, and interests. In exchange, the Certain Insurers will pay the estate $11.66 million, Fraser's, RTC, and DJO Services LLC will provide the Certain Insurers with a broad release, and the Certain Insurers will provide Fraser's with a similar release. Finally, the Certain Insurers will receive the benefit of an injunction to effectuate the sale of the policies free of liens, claims, and encumbrances. The specific language requested states

> Pursuant to sections 363 and 105(a) of the Bankruptcy Code, all rights, titles, and interests in Policies issued by any Insurers will be deemed to have been sold, transferred, and conveyed to those Insurers, free and clear of all claims, liens, encumbrances, and interests of any kind or nature whatsoever. In order to effectuate the sale, transfer, and conveyance of the Policies, all persons and entities shall be, and hereby are, permanently enjoined, barred, and estopped from seeking any relief from or taking any action or asserting any claim against the Insurers based upon, arising out of, in connection with, attributable to, or relating to the Policies, for the purpose of directly or indirectly collecting, recovering, receiving, or asserting any claims, liens, encumbrances, or interests of any kind or nature based upon, arising out of, under, and/or relating to the Policies, including, but not limited to, any claims, liens, encumbrances, or interests such person or entity had, has, or may have against or in the Debtor or its estate or successors.

The Certain Insurers are not obligated to pay the $11.66 million unless and until an order approving the sale and issuing the injunction becomes a final order.

## II. Legal Analysis

### Jurisdiction

Bankruptcy judges may hear and determine all cases under and all core proceedings arising under or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Core proceedings include matters concerning the administration of the estate, orders approving the sale of property, and other proceedings affecting the liquidation of the estate or the adjustment of the debtor-creditor relationship, except personal injury tort or wrongful death

claims. *Id.* §§ 157(b)(2)(A), (N), and (O). The motion requests approval of the Settlement Agreement under Federal Rule of Bankruptcy Procedure 9019. The Settlement Agreement involves the sale of certain insurance policies of Fraser's back to the Certain Insurers free and clear pursuant to Section 363(f) of the Bankruptcy Code. Fraser's insurance policies are property of the estate. *See Minoco Grp. of Cos., Ltd. v. First State Underwriters Agency of New England Reinsurance Corp. (In re Minoco Grp. of Cos., Ltd.)*, 799 F.2d 517, 519 (9th Cir. 1986). Along with the free and clear sale, the Settlement Agreement contemplates and the Motion requests entry of a supplemental injunction pursuant to Section 105(a) of the Bankruptcy Code to ensure the free and clear sale provides the Certain Insurers with meaningful relief from future contribution and indemnity claims.

The funds from the sale of the insurance policies will provide the primary funding for the liquidating trust Fraser's intends to create as part of its plan of reorganization for the payment of asbestos-related personal injury and wrongful death claims. The funding from the Certain Insurers is essential to making Fraser's plan work, as there are no other assets available to administer, and the liquidation of these insurance policies will result in substantial payments to the asbestos exposure victims. The Court has jurisdiction over the Motion, including the injunction preventing the non-settling insurers from bringing contribution and indemnity claims against the Certain Insurers, under 28 U.S.C. §§ 157(b)(2)(A), (N), and (O).

<u>Issues</u>

1. Is the Settlement Agreement fair and equitable under Federal Rule of Bankruptcy Procedure 9019?
2. Have the requirements for a free and clear sale under Section 363 of the Bankruptcy Code been satisfied, including the requirement that the non-settling insurers' interests be adequately protected?

3. May the Court issue the requested supplemental injunction under Section 105(a) of the Bankruptcy Code, barring the non-settling insurers from pursuing contribution claims against the Certain Insurers?

1. <u>Approval of the Settlement Agreement</u>

To approve a settlement under Rule 9019, the court must find that the settlement was the result of a good faith negotiation and that the compromise is fair and equitable. *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986). "In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider: '(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.'" *Id.* (quoting *Lambert v. Flight Transp. Corp. (In re Flight Trans. Corp. Sec. Litig.)*, 730 F.2d 1128, 1135 (8th Cir. 1984)). The party proposing the settlement has the burden of persuasion that the compromise is fair and equitable. *Id.*

The record shows significant efforts to resolve multiple, complex insurance coverage disputes. The Settlement Agreement also resolves considerable risk, expense, and delay from likely further litigation. In particular, the Settlement Agreement prevents a race to the courthouse by asbestos-related tort claimants, instead funneling the proceeds of the sale to a liquidating trust for orderly administration. Further, the Settlement Agreement disposes of potentially expensive legal disputes with the Certain Insurers surrounding exhaustion of policy limits. Contrary to the suggestion of the Opposing Insurers, there is ample evidence of the risks of exhaustion and coverage disputes. As shown by the PWIC litigation, exhaustion and coverage disputes are imminent, and there is substantial risk the Cost Sharing Agreement will

no longer protect Fraser's from litigation regarding insurance coverage. The Settlement Agreement also resolves several objections to the PWIC settlement, reducing the risk of delay in obtaining approval of the PWIC settlement on appeal and securing the related payment of approximately $1.95 million from PWIC. Given the risks, cost, and delay associated with litigating these disputes, the Settlement Agreement provides Fraser's with significant benefit.

Finally, approval of the Settlement Agreement is in the paramount interests of the creditors in this case. The Settlement Agreement will result in approximately $11.66 million being sent to the liquidating trust for distribution to creditors with asbestos-related tort claims. The payments from the Settlement Agreement are the primary funding for the liquidating trust. The creditors have indicated their support for the Settlement Agreement both through the Official Committee of Unsecured Creditors' reply filed in support of the Motion and by the creditors' pre-petition votes in favor of a plan of reorganization with the Settlement Agreement and related liquidating trust as its centerpiece. *See* ECF No. 83. The Court finds that the Settlement Agreement is fair and equitable and in the best interests of the estate and the creditors.

2. <u>Approval of the Sale of Insurance Policies</u>

    A. *Sale of Insurance Policies Free and Clear of All Interests*

The Settlement Agreement contemplates that the Certain Insurers' CGL policies will be sold back to them in a free and clear sale under Section 363 of the Bankruptcy Code. Property of the estate may be sold outside of the ordinary course of business. *See* 11 U.S.C. § 363(b). "[D]ebtors who wish to utilize § 363(b) to dispose of property of the estate must demonstrate that such disposition has a valid business justification." *240 N. Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 N. Brand Partners, Ltd.)*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996). "In addition to proving that the proposed sale has a valid business

justification, the debtor must also show that the sale is proposed in good faith." *Id.* To sell property of the estate free of all interests, one of the following conditions must be satisfied:

>(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
>(2) such entity consents;
>
>(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
>(4) such interest is in bona fide dispute; or
>
>(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Fraser's has shown that the proposed sale has a valid business justification and was proposed in good faith. The sale resolves several insurance coverage disputes that risk leaving the asbestos-related tort claimants with no access to insurance proceeds from some insurers and no entity providing overarching administration of claims for the benefit of Fraser's claimants. The sale will effectuate the orderly administration of asbestos-related tort claims in accordance with Fraser's plan of reorganization, including allowing claimants to pursue other insurance coverage for their claims where appropriate. The proposed sale was negotiated in good faith at arms-length by sophisticated counsel. The proposed sale is supported by valuable consideration, including payments of approximately $11.66 million.

Moreover, grounds exist to sell the insurance policies free and clear of all interests under 11 U.S.C. §§ 363(f)(1), (2), and (5). First, Washington state law permits sales free and clear of interests under Washington's receivership statute and other nonbankruptcy law. *See* RCW 7.60.260; *King Cty. v. Travelers Indem. Co.*, No. 14-CV-1957 BJR, 2018 WL 1792189, at *2 (W.D. Wash. Apr. 16, 2018). The policies can be sold free and clear of some interests under Section 363(f)(2), because the holders of asbestos claims have given the equivalent of

their consent by submitting ballots in favor of the pre-petition plan of reorganization and by the Official Committee of Unsecured Creditors' filing of a reply in support of the Settlement Agreement that includes the free and clear sale. Finally, the asbestos-related tort claimants could be compelled to accept a money satisfaction of their interests in the policies in a legal or equitable proceeding. The Court approves the proposed sale of certain insurance policies free and clear of all interests pursuant to Sections 363(b) and (f) of the Bankruptcy Code.

The Opposing Insurers argue that the Court cannot approve a sale of the insurance policies free and clear of their interests, which they characterize as (1) an equitable contribution right and (2) a contractual claim for contribution under the Cost Sharing Agreement. As to the first interest, it derives entirely from the policies being sold and exists solely because Fraser's purchased and maintained the policies. The contribution claims are interests in the policies, which are property of the estate. The Court joins several courts in approving the sale of insurance policies back to insurers in exchange for proceeds to fund a trust for creditors exposed to asbestos by a company now in bankruptcy. *See, e.g.*, Order Approving Settlement Agreement and Enjoining Certain Claims Against the Hartford Parties, *In re Burns & Roe Enters., Inc.,* No. 00-41610RG (Bankr. D.N.J. Feb. 17, 2005), ECF No. 1200 (hereinafter Burns & Roe Order). As to the second interest, the Cost Sharing Agreement is an agreement between Fraser's insurers entered into without Fraser's consent and for which it received no consideration. The Cost Sharing Agreement may not act as a bar to Fraser's rights to settle its coverage claims.

B. *Adequate Protection of the Non-Settling Insurers' Interests*

However, as the Opposing Insurers raised in their objection, on the request of an entity that has an interest in the property being sold, the court shall prohibit or condition the sale as necessary to adequately protect that party's interest. *See* 11 U.S.C. § 363(e). The non-settling insurers are being required to give up certain subrogation, contribution, and indemnity rights

against the Certain Insurers. As courts have recognized, those rights are valuable. *See, e.g., Fireman's Fund Ins. Co. v. Plant Insulation Co. (In re Plant Insulation Co.)*, 734 F.3d 900, 909 (9th Cir. 2013). On the other hand, the non-settling insurers also benefit from approval of the Settlement Agreement. It is not just the tort claimants who are at risk of policy exhaustion. The non-settling insurers bear that risk as well and will benefit from the payments made to the liquidating trust pursuant to the Settlement Agreement. Moreover, the liquidating trust will directly handle certain historically settled claims and substantially underinsured claims without tendering those claims to the non-settling insurers, alleviating the non-settling insurers of incurring the costs and risks of defense and indemnity obligations associated with those claims.

The Opposing Insurers argue that the Settlement Agreement does not adequately protect their subrogation, contribution, and indemnity rights against the Certain Insurers. Paragraph 6.8 of the Settlement Agreement states:

> The Parties agree that any plan proposed in the Bankruptcy Case shall not bar any holder of an Asbestos-Related Claim from pursuing any such Claim against any of the debtor, the reorganized debtor, or any Non-Settled Insurer. However, the plan shall provide any judgment on any Claim against one or more Non-Settled Insurers shall be reduced by the adjudicated amount of any Contribution Claim such Non-Settled Insurer would have been able to successfully assert against the Insurers. The purpose of this provision is to ensure that the Insurers pay their respective portions of the Settlement Amount and no more on account of Asbestos-Related Claims or Contribution Claims.

In effect, the non-settling insurers may reduce their liability under a judgment against them by a claimant by the "adjudicated amount of any Contribution Claim such Non-Settled Insurer would have been able to successfully assert." In the settlement context, awareness of the judgment reduction provision will inform what judgment could be obtained against the non-settling insurer at trial and, therefore, what settlement amount would be acceptable to the claimant. In both circumstances, the claimant could then seek the remainder of what he or she

MEMORANDUM DECISION ON MOTION TO APPROVE
SETTLEMENT AGREEMENT WITH CERTAIN INSURERS - 11

Case 18-41245-BDL    Doc 284    Filed 07/18/18    Ent. 07/18/18 12:50:23    Pg. 11 of 16

could have been awarded or settled for, but did not because of the contribution claim, from the liquidating trust. The liquidating trust would then evaluate the claimant's application for such compensation. Paragraph 6.8 and the related trust distribution procedures provide the non-settling insurers with mechanisms to protect themselves from overpayment, as well as mechanisms for claimants to seek any uncollected claim amounts resulting from such protection from the liquidating trust. Combined with the benefits received from avoiding the risks of policy exhaustion as well as the costs and risks associated with processing certain claims, the Court finds that the non-settling insurers' interests are adequately protected.

In their supplemental briefing, the Opposing Insurers raised the issue of the Certain Insurers' obligations under the Cost Sharing Agreement and the impact of the supplemental injunction on those obligations. As previously discussed, the Cost Sharing Agreement is between the insurers and does not include Fraser's. It is not an interest in Fraser's policies that is entitled to protection under Section 363(e). Moreover, the Court views the Cost Sharing Agreement as not providing the protections which the Opposing Insurers assert. It preserves the exhausted coverage, coverage gap, and other policy defenses. At best, it is a temporary apportionment of costs and claims.

3. <u>Issuance of an Injunction Under Section 105(a) to Give Effect to the Free and Clear Sale Under Section 363(f)</u>

The principal dispute at the center of the Motion concerns whether this Court may issue a permanent supplemental injunction that prevents a non-settling insurer also liable for a particular claim from pursuing one or more of the Certain Insurers for contribution or indemnity. The Opposing Insurers and the U.S. Trustee argue the Court cannot issue a supplemental injunction because such injunctions are the functional equivalents of third party releases prohibited under Ninth Circuit precedents and are unfair to the non-settling insurers.

**Below is a Memorandum Decision of the Court.**

The Opposing Insurers and U.S. Trustee are correct that this Circuit has interpreted Section 524(e) of the Bankruptcy Code as prohibiting bankruptcy courts from issuing global third-party releases pursuant to Section 105(a). *See Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401-02 (9th Cir. 1995); *Am. Hardwoods, Inc. v. Deutsche Credit Corp. (In re Am. Hardwoods, Inc.)*, 885 F.2d 621, 626 (9th Cir. 1989*)*. However, the supplemental injunction proposed in this case is distinguishable from those precedents. The crux of the difference is that, unlike releases of all claims against a third party, the supplemental injunction is narrowly tailored to only apply to derivative claims. A third party asserts a claim that is derivative of an insurance policy when the third party "seeks to collect out of the proceeds of [the debtor's] insurance policies on the basis of [the debtor's] conduct." *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 92-93 (2d Cir. 1988)**.** Derivative claims are inseparable from the debtor's own insurance policies. *Id.* The contribution and indemnity claims subject to the supplemental injunction are claims derived from the insurance policies being sold back to the Certain Insurers free and clear pursuant to the Settlement Agreement. Because it only impacts derivative claims, the supplemental injunction is not the equivalent of a discharge of a third party. *See In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 418 n.26 (Bankr. N.D. Cal. 2004).

There are notable differences between this case and *Lowenschuss*. Unlike in *Lowenschuss*, the dispute at hand involves mass torts and multiple parties and interests. The supplemental injunction does not provide for retention of the asset by the debtor or a purchasing third party, but rather the payment of the cash value of those assets into a liquidating trust that is essential to Fraser's plan of reorganization. The *Lowenschuss* Court did not find that the release was essential to the reorganization. And unlike the settlement here, which impacts all of the claimants who can seek recoveries based on the insurance

policies being sold, the dispute in *Lowenschuss* was very limited and did not involve a derivative claim.

The Opposing Insurers and the U.S. Trustee argue that these kind of supplemental injunctions are only appropriate in cases where the debtor satisfies the requirements of Section 524(g) of the Bankruptcy Code. Fraser's does not satisfy those requirements because it is not an ongoing entity that can contribute the value of its equity to the liquidating trust. But a debtor that can qualify under Section 524(g) is not the only debtor that may seek a Section 105(a) injunction in connection with a Section 363(f) sale. Supplemental injunctions have been approved and upheld in bankruptcy cases in this Circuit on several occasions where the requirements of Section 524(g) could not be satisfied. *See, e.g.*, Second Amended Order Confirming Third Modified Joint Plan of Reorganization, *In re Soc'y of Jesus, Or. Province*, No. 09-30938-elp11 (Bankr. D. Or. July 29, 2011), ECF No. 1336; Order Approving Third Amended and Restated Disclosure Statement and Confirming Third Amended and Restated Joint Plan of Reorganization, *In re Catholic Bishop of N. Alaska*, No. F08-00110-DMD (Bankr. D. Alaska Feb. 17, 2010), ECF No. 689; Order Confirming Second Amended Plan of Reorganization, *In re Catholic Bishop of Spokane*, No. 04-08822 (Bankr. E.D. Wash. Apr. 24, 2007), ECF No. 1921; Order Confirming Third Amended and Restated Joint Plan of Reorganization, *In re Roman Catholic Archbishop of Portland in Or.*, No. 04-37154-elp11 (Bankr. D. Or. Apr. 17, 2007), ECF No. 5097; Order Confirming Third Amended and Restated Plan of Reorganization, *In re Roman Catholic Church of Diocese of Tucson*, No. 4-04-bk-04721-JMM (Bankr. D. Ariz. Aug. 1, 2005), ECF. No. 791. Moreover, in its discussion of the bankruptcy amendments adding Section 524(g) to the Bankruptcy Code, the House Judiciary Committee noted that Section 524(g) was added to give added certainty that the trust/injunction mechanisms used in cases like *Johns-Manville* would withstand challenges. *See* H.R. Rep. No. 103-835, at 40-41 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3349.

The Committee did not express an opinion regarding whether bankruptcy courts could otherwise use their traditional equitable powers to grant similar relief in aid of other provisions of the Bankruptcy Code.

In fact, supplemental injunctions have been upheld in the precise scenario present here: the sale of insurance policies back to insurers pursuant to Sections 363(b) and (f) of the Bankruptcy Code. *See, e.g., In re Roman Catholic Bishop of Stockton*, No. 14-20371, 2017 WL 118013, at *8-9 (Bankr. E.D. Cal. Jan. 10, 2017); *In re Sunland, Inc.*, No. 13-13301-tr7, 2014 WL 7011747, at *5 (Bankr. D.N.M. Dec. 11, 2014); Burns & Roe Order, *supra*, at 4-6, 8-9. Courts have noted that supplemental injunctions under Section 105(a) are permissible in aid of other provisions of the Code such as Section 363(f). *See In re Roman Catholic Bishop of Stockton*, 2017 WL 118013, at *9; *In re Sunland, Inc.*, 2014 WL 7011747, at *5; Burns & Roe Order, *supra*, at 6. In the absence of an accompanying supplemental injunction, a free and clear sale granted under Section 363(f) may lack meaningful effect for the purchaser. Moreover, the notion of a sale of an insurance policy back to the insurer in connection with instituting a bar on other insurers' contribution and indemnity claims against the purchasing insurer has been recognized in nonbankruptcy law. *See King Cty.*, 2018 WL 1792189, at *2.

The Court finds that the supplemental injunction is a necessary element of the sales of the policies. Without the supplemental injunction, the Certain Insurers would not be willing to purchase the insurance policies, as they would continue to have potential liability to the non-settling insurers. The injunction is necessary and appropriate to carry out the sale under Section 363(f) pursuant to Section 105(a), and without it the idea of a sale free and clear would be denuded of its meaning. The supplemental injunction also prevents irreparable harm to the Certain Insurers, who negotiated the purchase of the insurance policies back from Fraser's with the intent of avoiding further litigation over the claims related to those policies. That value will be lost if the non-settling insurers can seek indemnity and contribution claims

**Below is a Memorandum Decision of the Court.**

from the Certain Insurers for the same claims. A properly tailored supplemental injunction is necessary and appropriate and can balance the equities between the Certain Insurers, the non-settling insurers, Fraser's, and its creditors.

Therefore, Fraser's Motion for an Order Approving (I) a Settlement Agreement with Certain Insurers, (II) the Sale of Certain Policies to Certain Insurers, and (III) Certain Other Relief to be Provided to Certain Insurers (ECF No. 61) is GRANTED.

//END OF ORDER//